**NOT FOR PUBLICATION IN WEST'S HAWAIʻI REPORTS AND PACIFIC REPORTER**

**Electronically Filed
Intermediate Court of Appeals
CAAP-21-0000455
18-APR-2022
08:56 AM
Dkt. 51 SO**

NO. CAAP-21-0000455

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

IN THE INTEREST OF AK

APPEAL FROM THE FAMILY COURT OF THE FIRST CIRCUIT
(FC-S NO. 20-00183)

SUMMARY DISPOSITION ORDER
(By: Ginoza, Chief Judge, Hiraoka and McCullen, JJ.)

Father-Appellant (**Father**) appeals from the Family Court of the First Circuit's (**Family Court**) July 21, 2021 Order Terminating Parental Rights.[1] The parental rights of Father and Respondent-Appellee Mother (**Mother**) to their child (**AK**) were terminated and Petitioner-Appellee State of Hawaiʻi, Department of Human Services (**DHS**) was awarded permanent custody.

On appeal, Father challenges Findings of Fact (**FOF**) 81 through 84, and 102.[2] Father contends (1) the Family

---

[1] The Honorable Andrew T. Park presided.

[2] The challenged FOFs are as follows:

FINDINGS OF FACT

. . . .

81. However, Father has a history of non-compliance with court-ordered and DHS recommended services starting

(continued...)

Court erred by ordering DHS to file a motion to terminate parental rights because there was a compelling reason why it was not in the best interest of AK to file the motion, (2) DHS did not provide Father with a reasonable opportunity to reunify with

---

[2](...continued)
with the case regarding [AK's siblings] in November 2018. Father continues to engage in his pattern of behavior of starting but not completing services, especially substance abuse treatment, relapsing to drug use, not fully engaging in services, and failing to maintain contact with the DHS. Based on Father's demonstrated patterns of behaviors, it is not reasonably foreseeable that Father will become able to provide a safe family home for the Child in the reasonably foreseeable future.

82. Even though the DHS was not required to make reasonable efforts to reunify the Child with Father and to give Father a reasonable opportunity to reunify with the Child due to the Court's aggravated circumstances findings and orders, under the circumstances presented in this case, Father was given a reasonable opportunity to reunify with the Child. The DHS was willing to work with Father in his efforts to reunify with the Child.

[Hawaii Revised Statutes (**HRS**)] § 587A-33(a)(1) and (2).

The following HRS § 587A-33(a)(1) and (2) findings of fact regarding [Father] are made by clear and convincing evidence, as required by HRS § 587A-33(a).

83. Father is not presently willing and able to provide the Child with a safe family home, even with the assistance of a service plan.

84. Father is willing but it is not reasonably foreseeable that Father will become able to provide a safe family home, even with the assistance of a service plan, in a reasonable period of time not to exceed two years from the Child's November 16, 2020 date of entry into foster care. Even if Father were to suddenly change his long-standing pattern of behavior, there is no likelihood that he would sufficiently resolve his problems at any identifiable point in the future.

. . . .

102. Under the circumstances presented by this case, the DHS has exerted reasonable and active efforts to reunify Father and Mother with the Child by identifying necessary, appropriate and reasonable services to address the identified safety issues/problems, and by making appropriate and timely referrals for those services, during the period where the DHS was required to make reasonable efforts, and even when the DHS was not required to make reasonable efforts. Any delays in the delivery of services were due to Father's and Mother's own conduct.

AK, (3) there was not clear and convincing evidence Father would not become willing and able to provide a safe family home within a reasonable period of time, and (4) Mother's right to court-appointed counsel was violated.

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised by the parties, we resolve Father's points of error as follows:

(1)  Father contends the Family Court erred by ordering DHS to file a motion to terminate parental rights because there was a compelling reason why it was not in the best interest of AK to file the motion pursuant to HRS § 587A-28(e)(4)(B) (2018).[3]

---

[3]  HRS § 587A-28(e)(4) provides:

> (e)  If the court finds that the child's physical or psychological health or welfare has been harmed or is subject to threatened harm by the acts or omissions of the child's family, the court:
>
> . . . .
>
> (4)  Shall determine whether aggravated circumstances are present.
>
> > (A)  If aggravated circumstances are present, the court shall:
> >
> > > (i)  Conduct a permanency hearing within thirty days, and the department shall not be required to provide the child's parents with an interim service plan or interim visitation; and
> > >
> > > (ii)  Order the department to file, within sixty days after the court's finding that aggravated circumstances are present, a motion to terminate parental rights unless the department has documented in the safe family home factors or other written report submitted to the court a compelling reason why it is not in the best interest of the child to file a motion.

(continued...)

To support this contention, Father first argues that a November 12, 2020 Safe Family Home Report "clearly stated there exist [sic] a compelling reason why it is not in the child's best interest to file a motion to terminate parental rights." Father cites two portions of the report that stated (1) Mother appeared bonded to AK before being discharged from the hospital after giving birth, and (2) DHS has not yet made reasonable efforts to locate, engage, or provide services to parents. Because Father did not assert below that bonding with Mother was a compelling reason to not file a motion to terminate parental rights, Father's claim related to bonding with Mother is waived on appeal. Hawaiʻi Rules of Appellate Procedure (**HRAP**) Rule 28(b)(4). Moreover, by the time of a hearing on January 19, 2021, when the Family Court determined there were aggravating circumstances[4] and that there was no compelling reason not to file a motion to terminate parental rights, DHS had located parents and engaged with them to provide services. Specifically, the Family Court's orders on November 16, 2020, and November 27, 2020, reflect that Mother and Father each attended a court

---

[3](...continued)
> (B) If aggravated circumstances are not present or there is a compelling reason why it is not in the best interest of the child to file a motion to terminate parental rights, the court shall order that the department make reasonable efforts to reunify the child with the child's parents and order an appropriate service plan[.]

[4] At the hearing on January 19, 2021, the Family Court found that aggravated circumstances, as defined in HRS § 587A-4, existed in this case because the parents' rights regarding siblings of AK had been judicially terminated in a prior case. FOF 37.

hearing and were ordered to follow a service plan dated November 12, 2020.

Father next argues that HRS § 587A-28(e)(4)(A)(ii) does not give the Family Court discretion to not accept DHS's position regarding whether there is a compelling interest to not file a motion to terminate parental rights. We reject Father's argument because, under HRS § 587A-28(e)(4)(A)(ii), once the Family Court determines aggravated circumstances exist, it must then make its own best interest determination as to whether DHS "has documented in the safe family home factors or other written report submitted to the court a compelling reason why it is not in the best interest of the child to file a motion." Cf. In re AS, 132 Hawai'i 368, 377, 322 P.3d 263, 272 (2014) (the family court is authorized and required to make its own best interest of the child determination even where DHS has the duty and right to determine where a child shall live for placement purposes as the permanent custodian). In other words, it is the Family Court's duty to determine whether a compelling reason was documented.

Father also claims that after ordering DHS to file a motion to terminate parental rights on January 19, 2021, the Family Court was uncertain whether compelling reasons existed and may have wanted to hold an evidentiary hearing. Specifically, Father claims the Family Court ordered DHS to submit another report to address the issue of whether compelling reasons existed because DHS previously objected to filing a motion to terminate parental rights. Father mischaracterizes the proceeding. DHS

inquired whether the Family Court still wanted "the department and possibly the GAL to set forth any compelling reasons why the goal should be reunification at – for that permanency hearing" because DHS noted reunification could still be ordered as part of concurrent planning despite a finding of aggravated circumstances due to HRS chapter 587A being silent on the issue of concurrent planning. The Family Court responded that it should be included in the next reports. Documentation to justify reunification under concurrent planning is not related to whether there is a compelling reason not to file a motion to terminate parental rights after finding an aggravated circumstance under HRS § 587A-28(e).

Lastly, Father relies on a February 9, 2021 Safe Family Home Report, which indicated AK was bonded to Father and "stated that compelling reasons to waive the requirement to file a motion for termination of parental rights do not apply because the child had not been in care for 10 months." However, during a February 18, 2021 hearing, DHS stated that the February 9, 2021 Safe Family Home Report did not find any compelling reason not to file a motion to terminate parental rights, and asked for a finding that the Family Court confirm its January 19, 2021 ruling that there was no compelling reason not to file a motion to terminate parental rights. Father stated he had no position on DHS's requested findings. Thus, the February 9, 2021 report does not support Father's contention, and Father's assertion was nonetheless waived. HRAP Rule 28(b)(4).

(2)  Father claims DHS failed to provide him with a reasonable opportunity to reunify with AK because the Family Court erred by ordering DHS to file a motion to terminate parental rights within 60 days pursuant to HRS § 587A-28(e)(4). Father claims DHS did not provide reasonable services because it was under an incorrect assumption the Family Court found no compelling reason why it was not in AK's best interest to file a motion to terminate Father's parental rights.  As discussed above, the Family Court did not err by ordering DHS to file a motion to terminate parental rights within 60 days pursuant to HRS § 587A-28(e)(4)(A)(ii).  Therefore, DHS was not under an incorrect assumption.

(3) Father contends that the Family Court abused its discretion when it found there was clear and convincing evidence he would not become willing and able to provide a safe family home within a reasonable period of time.  Father highlights his participation in drug treatment and parenting classes, and his bonding with AK; he notes he was afforded only eight months, far less than the statutory two-year or purported 15-month periods.[5]

The Family Court shall determine whether there exists clear and convincing evidence it is not reasonably foreseeable a parent will become willing and able to provide a safe family home, even with the assistance of a service plan, within a reasonable period of time, which shall not exceed two years from

_____

[5]  It is unclear what statutory 15-month period Father refers to because no citation to any statutory authority was provided.

the child's date of entry into foster care.[6] HRS § 587A-33(a)(2) (2018). Two years is the maximum, not minimum, amount of time within which a parent must become willing and able to provide a safe family home. In re MP, 144 Hawaiʻi 157, 438 P.3d 289, No. CAAP-18-0000731, 2019 WL 1614717 at *2 (App. April 16, 2019) (SDO). A parent's history of compliance or noncompliance with prior court-ordered service plans is relevant and probative of a parent's capacity to provide a safe family home and the reasonable foreseeability that a parent will become willing and able to provide a safe family home within a reasonable period of time. In re Doe, 95 Hawaiʻi 183, 196, 20 P.3d 616, 629 (2001).

Father previously attempted to participate in services to address his problems and safety issues, which resulted in termination of his parental rights to AK's older siblings in August 2020. FOF 7-9, 12, 15, 68. A July 2020 psychological evaluation determined "Father suffered from Stimulant Use Disorder, Amphetamine Type, Severe, Early Remission and Cannabis Use Disorder, Severe, Early Remission," and he minimized his drug use. FOF 69. The evaluation also found that Father's prognosis would improve with twelve months of sobriety. FOF 69. Father entered intensive outpatient treatment but was terminated for non-compliance in March 2021 after 14 days and, thus, did not successfully complete the program. FOF 71.

---

[6] Due to the Family Court finding an aggravated circumstance and that DHS should file a motion to terminate parental rights without a concurrent plan of reunification, the Family Court was not required to order a service plan be implemented but did allow Father to voluntarily comply with a service plan, dated November 12, 2020.

At the time of trial, in July 2021, Father was participating in another intensive outpatient treatment program but had not yet completed it. FOF 72. Father admitted to continuing to consume alcoholic beverages despite knowing it was against the recommendations for drug treatment because it could lead to use of illicit substances. FOF 73. Father also admitted to relapsing into drug use during the pendency of this case by using cocaine and methamphetamines. FOF 74.

Thus, the record contains substantial evidence supporting the Family Court's findings that Father continued to engage in a pattern of behavior such as starting but not completing services, especially substance abuse treatment, relapsing to drug use, and not fully engaging in services. Thus, the Family Court did not clearly err by finding, based on Father's demonstrated patterns of behavior, that there was clear and convincing evidence it was not reasonably foreseeable that Father would become able to provide a safe family home within a reasonably foreseeable future. FOF 81.[7]

(4) Father claims Mother's right to counsel was violated. However, Father lacks standing to enforce Mother's parental rights. In re HK, 142 Hawaiʻi 486, 421 P.3d 694, Nos. CAAP-17-0000085 and CAAP-17-0000086, 2018 WL 3201647 at *2

---

[7] Although Father challenges FOF 81, he provided no specific argument as to why it was clearly erroneous, and it is supported by the evidence in the record.

n.3 (App. June 29, 2018) (SDO) (father lacked standing to enforce mother's parental rights) (citation omitted).

Therefore, IT IS HEREBY ORDERED that the Order Terminating Parental Rights, entered on July 21, 2021, in the Family Court of the First Circuit, is affirmed.

DATED:  Honolulu, Hawaiʻi, April 18, 2022.

On the briefs:

Herbert Y. Hamada,
for Father-Appellant.

Patrick A. Pascual
Julio C. Herrera
Deputy Attorneys General,
for Petitioner-Appellee,
Department of Human Services.

/s/ Lisa M. Ginoza
Chief Judge

/s/ Keith K. Hiraoka
Associate Judge

/s/ Sonja M.P. McCullen
Associate Judge